UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - v. -

MOHAMED IBRAHIM AHMED,
    a/k/a "Talha,"

              Defendant.

- - - - - - - - - - - - - - - - - -x

:    SEALED
     INDICTMENT
:

:

:    10 Cr.

:    **1 0 CRIM.**  **131**

:

:

COUNT ONE

CONSPIRACY TO PROVIDE MATERIAL SUPPORT
TO A FOREIGN TERRORIST ORGANIZATION

    The Grand Jury charges:

BACKGROUND TO THE CONSPIRACY

*Al Shabaab*

    1.    For at least the past fifteen years, Somalia has
lacked a stable central government and has been vulnerable to
intense civil and sectarian violence.  In 2004, the Transitional
Federal Government ("TFG") was established in Somalia under
international auspices.  A loose coalition of Islamic insurgents
known as the Islamic Courts Union (or Council of Islamic Courts)
("ICU") fought against the TFG, however, and took control over
much of southern Somalia.  In early June 2006, the ICU captured
Somalia's capital city, Mogadishu, and the TFG retreated to
Baidoa, Somalia.  The ICU, together with an extremist faction of

"shock troops" known as Al Shabaab[1] continued to fight the TFG in Baidoa.  While in control of southern Somalia, the ICU and Al Shabaab are believed to have provided protection and safe haven for al-Qaeda operatives wanted for the 1998 bombings of the United States embassies in Kenya and Tanzania and a 2002 hotel bombing in Kenya.

2.   In late 2006, Ethiopian forces intervened on the TFG's behalf, routed the ICU, and recaptured Mogadishu.  With Ethiopian and African Union support, the TFG was put back into power.  Although it initially dispersed in the face of the Ethiopian invasion, Al Shabaab eventually regrouped and initiated a war in Somalia targeting all aspects of the TFG, including police stations, border posts, government facilities and civilian targets, as well as the TFG's Ethiopian and African Union supporters.  Al Shabaab captured several cities and towns in southern Somalia, including parts of Mogadishu itself.  In late 2008 and early 2009, Ethiopia began to withdraw its troops from Somalia, and Al Shabaab advanced against the TFG.  In late January 2009, Al Shabaab captured Baidoa, and TFG control was reduced to several square blocks in Mogadishu protected by

---

[1] Al Shabaab is also known by the following names, among others:  al-Shabab, Shabaab, the Youth, Mujahidin al-Shabaab Movement, Mujahideen Youth Movement, Mujahidin Youth Movement, MYM, Harakat Shabab al-Mujahidin, Hizbul Shabaab, Hisb'ul Shabaab, al-Shabaab al-Islamiya, Youth Wing, al Shabaab al-Islaam, al-Shabaab al-Jihaad, and the Unity of Islamic Youth.

African Union peacekeepers.

3.     Throughout its war against the TFG and its Ethiopian and African Union supporters, Al Shabaab has relied on violence —- targeted assassinations of civilians and journalists, and the use of improvised explosive devices, rockets, mortars, and automatic weapons -- to undermine the Somali government, quell the Somali population, and force the withdrawal of foreign troops; in late 2008, for example, Al Shabaab caused to be disseminated a videotape depicting the slow decapitation of an accused spy.  Al Shabaab has claimed responsibility for multiple suicide bombing attacks, including an attack on Burundian peacekeepers in Mogadishu on April 8, 2008; five simultaneous suicide bombings targeting government, Ethiopian, and United Nations facilities on October 29, 2008; and another suicide attack against Burundian peacekeepers on February 22, 2009.  Al Shabaab has declared that its ultimate goal is the imposition of Sharia, or strict Islamic law, throughout Somalia.

4.     Al Shabaab's former leader, Aden Hashi Ayrow, who had trained with al-Qaeda in Afghanistan prior to 2001, called for foreign fighters to come to Somalia to join Al Shabaab in a "holy war" against the Ethiopian and African Union forces in Somalia.  Ayrow's call was echoed by al-Qaeda's leadership, including Usama bin Laden and Ayman al-Zawahiri.  As a result of Al Shabaab's recruitment efforts, men from other countries – including the United States – have traveled to Somalia to engage

-3-

in violent jihad.

5.    In or about February 2008, the United States
Department of State designated Al Shabaab as a Foreign Terrorist
Organization under Section 219 of the Immigration and Nationality
Act, as amended, and as a Specially Designated Global Terrorist
under Section 1(b) of Executive Order 13224, as amended.

6.    Since the United States Department of
State designated Al Shabaab as a Foreign Terrorist Organization,
Al Shabaab has made numerous public statements demonstrating an
intent to harm the United States.  For example, in or about April
2009, Al Shabaab declared that it was responsible for mortar
attacks against a United States Congressman who had been visiting
Somalia.  Similarly, after an Al Shabaab member was killed by
United States missile attacks in or about May 2008, Al Shabaab
leaders declared that the mujahideen would "hunt the U.S.
government" and that governments supporting the United States and
Ethiopia should keep their citizens out of Somalia.  In addition,
on or about April 5, 2008, Al Shabaab declared:

- "To the other mujahideen included in the American
  terrorist list: O' mujahideen brothers! . . .  May
  you be successful in your jihad and may you
  frustrate the enemies.  May Allah help you . . . .
  Please know, our beloved ones, that we are going
  through a crucial stage, in which the oppressors
  have crossed the line.  That is why we call upon
  you to round up and join forces under one
  leadership and a uniform flag in order to
  frustrate the enemies of Allah and execute his
  command. . . .  As a result, our jihad will be
  stronger and more harmful to our enemies."

- "In conclusion, we say to the patron and protector of the cross, America: the wager that you made on the Ethiopians, Ugandans, and Burundians in Somalia was a failure, and history has proven it. Allah willing, we will attack them, roam [through their ranks], cut off every path they will take, chase away those who follow them, and fight them as insects and wolves. [We] will give them a taste of the heat of flame, and throw them into hell."

<u>STATUTORY ALLEGATIONS</u>

7.  From at least in or about January 2009, up to and including in or about November 2009, in an offense occurring in and affecting interstate and foreign commerce, begun and committed outside of the jurisdiction of any particular State or district of the United States, MOHAMED IBRAHIM AHMED, a/k/a "Talha," the defendant, who will be first brought to and arrested in the Southern District of New York, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate and agree together and with each other to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), to a foreign terrorist organization, to wit, Al Shabaab, which has been designated by the United States Secretary of State as a foreign terrorist organization since in or about February 2008, as set forth above.

8.  It was a part and an object of the conspiracy that MOHAMED IBRAHIM AHMED, a/k/a "Talha," the defendant, and others known and unknown, would and did agree to provide Al Shabaab with material support and resources, including, among other things,

-5-

currency and personnel, knowing that Al Shabaab was a designated
terrorist organization (as defined in Title 18, United States
Code, Section 2339B(g)(6)), that Al Shabaab had engaged and was
engaging in terrorist activity (as defined in section
212(a)(3)(B) of the Immigration and Nationality Act), and that Al
Shabaab had engaged and was engaging in terrorism (as defined in
section 140(d)(2) of the Foreign Relations Authorization Act,
Fiscal Years 1988 and 1989), in violation of Title 18, United
States Code, Section 2339B.

<u>Overt Acts</u>

9.   In furtherance of the conspiracy and to effect the
illegal object thereof, MOHAMED IBRAHIM AHMED, a/k/a "Talha," the
defendant, and others known and unknown, committed the following
overt acts, among others:

a.   In or about April 2009, AHMED traveled to the
vicinity of Kismayo, Somalia, for the purpose of receiving jihad
training at an Al Shabbab paramilitary camp.

b.   In or about April 2009, while in the vicinity
of Kismayo, Somalia, AHMED provided approximately 1,000 Euros to
Al Shabaab.

c.   In or about April 2009, AHMED traveled to the
vicinity of Barawa, Somalia, for the purpose of receiving jihad
training at an Al Shabbab paramilitary camp.

d.   In or about April 2009, while in the vicinity

of Barawa, Somalia, AHMED provided approximately 2,000 Euros to Al Shabaab.

        e.    In or about April 2009, in the vicinity of Barawa, Somalia, AHMED received training and instruction on bomb-making and bomb-detonation, including instructions for the preparation and/or assembly of: (i) silver fulminate; (ii) urea nitrate; (iii) ammonium nitrate; (iv) acetone peroxide; (v) a TNT oxidation mechanism in a nitric-sulfuric acid mixture; (vi) a bomb detonator; and (vii) different types of bomb fuses.

        f.    In or about April 2009, while in Somalia, AHMED purchased a Kalashnikov rifle, of the kind commonly known as an AK-47; additional magazines for the rifle; and two grenades.

        g.    In or about November 2009, while in Nigeria, AHMED possessed documents reflecting the bomb-making instructions described in subparagraph (e).

        (Title 18, United States Code, Sections 2339B(a)(1), (d)(1)(C), (d)(1)(E) and 3238.)

COUNT TWO

MATERIAL SUPPORT TO A FOREIGN TERRORIST ORGANIZATION

The Grand Jury further charges:

10.   Paragraphs 1 through 9 are incorporated herein as if re-alleged in full.

11.   From at least in or about January 2009, up to and including in or about November 2009, in an offense occurring in and affecting interstate and foreign commerce, begun and committed outside of the jurisdiction of any particular State or district of the United States, MOHAMED IBRAHIM AHMED, a/k/a "Talha," the defendant, who will be first brought to and arrested in the Southern District of New York, unlawfully and knowingly did provide and attempt to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), to wit, currency and personnel, among other things, to Al Shabaab, knowing that Al Shabaab was a designated terrorist organization (as defined in Title 18, United States Code, Section 2339B(g)(6)), that Al Shabaab had engaged and was engaging in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and that Al Shabaab had engaged and was engaging in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

(Title 18, United States Code, Sections 2339B(a)(1), (d)(1)(C), (d)(1)(E), 3238, and 2.)

-8-

COUNT THREE

CONSPIRACY TO RECEIVE MILITARY-TYPE TRAINING FROM A FOREIGN
TERRORIST ORGANIZATION

The Grand Jury further charges:

12.  Paragraphs 1 through 9 are incorporated herein as
if re-alleged in full.

13.  From at least in or about January 2009, up to and
including in or about November 2009, in an offense occurring in
and affecting interstate and foreign commerce, begun and
committed outside of the jurisdiction of any particular State or
district of the United States, MOHAMED IBRAHIM AHMED, a/k/a
"Talha," the defendant, who will be first brought to and arrested
in the Southern District of New York, and others known and
unknown, unlawfully, willfully, and knowingly did combine,
conspire, confederate and agree together and with each other to
receive military-type training from and on behalf of Al Shabaab,
which has been designated by the United States Secretary of State
as a foreign terrorist organization since in or about February
2008, as set forth above.

14.  It was a part and an object of the conspiracy that
MOHAMED IBRAHIM AHMED, a/k/a "Talha," the defendant, and others
known and unknown, would and did agree to receive military-type
training from and on behalf of Al Shabaab, knowing that Al
Shabaab was a designated terrorist organization (as defined in
Title 18, United States Code, Section 2339D(c)(4)), that Al

-9-

Shabaab had engaged and was engaging in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and that Al Shabaab had engaged and was engaging in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), in violation of Title 18, United States Code, Section 2339D.

<u>Overt Acts</u>

15.    In furtherance of the conspiracy and to effect the illegal object thereof, MOHAMED IBRAHIM AHMED, a/k/a "Talha," the defendant, and others known and unknown, committed the overt acts set forth in paragraph 9 of this Indictment, which are fully incorporated by reference herein.

(Title 18, United States Code, Sections 371, 2339D(a),
(b)(3), (b)(5) and 3238.)

<u>COUNT FOUR</u>

<u>RECEIPT OF MILITARY-TYPE TRAINING
FROM A FOREIGN TERRORIST ORGANIZATION</u>

The Grand Jury further charges:

16.    Paragraphs 1 through 9 are incorporated herein as if re-alleged in full.

17.    From at least in or about January 2009, up to and including in or about November 2009, in an offense occurring in and affecting interstate and foreign commerce, begun and committed outside of the jurisdiction of any particular State or district of the United States, MOHAMED IBRAHIM AHMED, a/k/a

"Talha," the defendant, who will be first brought to and arrested in the Southern District of New York, unlawfully and knowingly did receive military-type training from or on behalf of a foreign terrorist organization, to wit, Al Shabaab, which has been designated by the United States Secretary of State as a foreign terrorist organization since in or about February 2008, as set forth above, knowing that Al Shabaab was a designated terrorist organization (as defined in Title 18, United States Code, Section 2339D(c)(4)), that Al Shabaab had engaged and was engaging in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and that Al Shabaab had engaged and was engaging in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

(Title 18, United States Code, Sections 2339D(a),
(b)(3), (b)(5), 3238, and 2.)

<u>FORFEITURE ALLEGATION</u>

18.  As a result of planning and perpetrating Federal crimes of terrorism against the United States, as alleged in Counts One through Four of this Indictment, MOHAMED IBRAHIM AHMED, a/k/a "Talha," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(G) and 2332b(g)(5), and Title 28, United States Code, Section 2461:

-11-

a.   all right, title, and interest in all assets,
     foreign and domestic;

b.   all right, title, and interest in all assets,
     foreign and domestic, affording a source of
     influence over Al Shabaab;

c.   all right, title and interest in all assets,
     foreign and domestic, acquired and maintained
     with the intent and for the purpose of
     supporting, planning, conducting, and
     concealing a Federal crime of terrorism
     against the United States, citizens and
     residents of the United States, and their
     property; and

d.   all right, title and interest in all assets,
     foreign and domestic, derived from, involved
     in, and used and intended to be used to
     commit a Federal crime of terrorism against
     the United States, citizens and residents of
     the United States, and their property;

including, but not limited to, a sum of money representing the value of the property described above as being subject to forfeiture.

(Title 18, United States Code, Section 981(a)(1)(G) and 2332b(g)(5) and Title 28, United States Code, Section 2461.)


FOREPERSON


PREET BHARARA
United States Attorney

-13-