UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA                  :

         - v -                                 :         10 Cr. 131 (PKC)
MOHAMED IBRAHIM AHMED

         Defendant                     :

-----------------------------------------------------------X


### DEFENDANT MOHAMED IBRAHIM AHMED'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS COUNT FIVE OF THE INDICTMENT


                    DAVID E. PATTON, ESQ.

    By:    Sabrina P. Shroff, Esq.

           Federal Defenders of New York, Inc.
           52 Duane Street - 10th Floor
           New York, New York 10007

           &

           Sean M. Maher, Esq.
           233 Broadway, Suite 801
           New York, New York, 10279
           Attorneys for Mohamed Ibrahim Ahmed


TO:    PRETT BHARARA, ESQ.
        United States Attorney
        Southern District of New York
        1 St. Andrew's Plaza
        New York, New York 10007

        Attn:   Benjamin Naftalis & Jocelyn Strauber, Esq.
                  Assistant United States Attorneys

# TABLE OF AUTHORITIES

## CASES

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) .................... 3

*EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244 (1991) .................... 1, 2

*Small v. United States*, 544 U.S. 385 (2005) .................... 1

*United States v. Al Kassar*, 582 F.Supp.2d 488 (2008) .................... 3, 4

*United States v. Erdos*, 474 F.2d 157 (4th Cir. 1973) .................... 4

*United States v. Gatlin*, 216 F.3d 207 (2d Cir. 2000). .................... 2, 4

*United States v. Velasquez-Mercado*, 697 F. Supp. 292 .................... 4

*United States v. Yakou*, 393 F.3d 231 (D.C. Cir. 2005) .................... 2

*Morrison v. National Australia Bank Ltd.*, 130 S. Ct 2869, 2886 (2010) ....................

## STATUTES

18 U.S.C. § 2339B .................... 3

18 U.S.C. § 3238 .................... 4, 5

18 U.S.C. § 7(3) .................... 4

18 U.S.C. § 924 .................... 1, 2, 3

21 U.S.C. § 960a .................... 3

82 Stat. 1213, 1224 (1968) .................... 2, 3

## OTHER AUTHORITIES

H.R. Conf. Rep. No. 1956, 1968 U.S.C.C.A.N. 4410, 4426 .................... 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
UNITED STATES OF AMERICA,

          - Against -

                                              10 CR 131 (PKC)

MOHAMED IBRAHIM AHMED,

          Defendant
-------------------------------------------------------------------x

## DEFENDANT MOHAMED IBRAHIM AHMED'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS COUNT FIVE OF THE INDICTMENT

### ARGUMENT

### COUNT FIVE MUST BE DISMISSED BECAUSE THE STATUTE DOES NOT APPLY EXTRATERRITORIALLY

Count Five of the Superseding Indictment ("Indictment") alleges Mr. Ahmed used, carried, or aided and abetted the use and carrying of, a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). Indictment ¶ 18. Specifically, the government alleges Mr. Ahmed – while in Somalia --possessed and carried with him a machine gun and semiautomatic weapon (an AK-47) and provided it to a co-conspirator. Id. None of the events alleged in Count Five, however, took place in, affected or impacted, the United States. Indeed, the government concedes that the offense was "begun and committed outside of the jurisdiction of any particular State or district of the United States." Id. As explained below, this flaw is fatal; Count Five of the Indictment must be dismissed because 18 U.S.C. § 924(c) does not apply extraterritorially.

It is a basic canon of statutory construction that "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the

United States." EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991) (citation and internal quotation marks omitted). This basic canon is based on the recognition that "Congress generally legislates with domestic concerns in mind." Small v. United States, 544 U.S. 385, 388 (2005). Limiting the extraterritorial reach of U.S. law serves a prudential purpose, namely to "protect against unintended clashes between our laws and those of other nations which could result in international discord." Arabian Am. Oil Co., 499 U.S. at 248.

In interpreting legislation, courts should consider whether the statute at issue "gives any indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control." Id. (citation and internal quotation marks omitted). In doing so, courts may "consider all available evidence about the meaning of the statute, including its text, structure, and legislative history." United States v. Gatlin, 216 F.3d 207, 212 (2d Cir. 2000). However, the courts also must remain mindful that "[f]ederal laws are deemed to apply only to the territorial jurisdiction of the United States unless Congress provides affirmative evidence to the contrary which is clearly expressed." United States v. Yakou, 393 F.3d 231, 243 (D.C. Cir. 2005). Here a review of the text and legislative history confirms that 18 U.S.C. § 924(c) does not apply, and was not meant to apply, extraterritorially.

18 U.S.C. § 924(c) provides, in relevant part:

> "[A]ny person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . ."

Notably, the statute omits any provision for extraterritorial jurisdiction.

2

Likewise the legislative history of § 924 does not include or demonstrate any intention – much less a "clearly expressed" intention (Yakou, 393 F.3d at 243) – on the part of Congress to apply the statute extraterritorially. Quite the contrary, § 924 was passed as part of the Gun Control Act of 1968, a statute that unquestionably sought to deal with the purely domestic issue of rising gun violence in American cities. See 82 Stat. 1213, 1224 (1968), Pub. L. No. 90-618. The original statute made it a crime for anyone to use or carry a firearm during "any felony which may be prosecuted in the court of the United States." 82 Stat. at 1224. While the statute has been amended several times since its passage, neither the original act nor its subsequent amendments express any intent or desire on the part of Congress to punish conduct occurring outside U.S. borders. In fact, the House Committee responsible for drafting the bill noted "[h]andguns, rifles, and shotguns have been the chosen means to execute three-quarters of a million people *in the United States* since 1900." H.R. Conf. Rep. No. 1956, 1968 U.S.C.C.A.N. 4410, 4426. (emphasis added). It went on to state that the Gun Control Act "responds to widespread *national concern* that existing Federal control over the sale and shipment of firearms [across] State lines is grossly inadequate." *Id.* (emphasis added; brackets in original). In passing section 924, Congress was clearly preoccupied with addressing domestic gun violence, not with deliberately and expressly extending U.S. law beyond this country's territorial borders.

Congress knows how to give extraterritorial effect to its statutes when it desires to do so. See Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 440 (1989). Had Congress intended 924(c)(1)(A) to apply extraterritorially, it would have included the appropriate language. Both the narcoterrorism and material support statutes, for instance, make explicit provision for their extraterritorial application. See 21 U.S.C. § 960a(b) ("There is

3

jurisdiction over an offense under this section if . . ."); 18 U.S.C. § 2339B(d) (titled "Extraterritorial Jurisdiction"). The 924 statute does not.

In 2010, the United States Supreme Court, in an opinion by Justice Scalia, addressed the issue of extraterritorial application of statues like 18 U.S.C. 924 i.e., statutes that are silent on their extraterritorial reach and application. Morrison v. National Australia Bank Ltd., 130 S. Ct 2869, 2886 (2010).

Justice Scalia unequivocally rejected all arguments made in the lower courts that advocated for an extension of the United States securities laws to countries abroad. In doing so, the Supreme Court once again made clear that where, as here, a United States statute is silent on geographic reach, there is no extraterritorial jurisdiction. Justice Scalia, writing for the majority, stated: "[W]hen a statute gives no clear indication of an extraterritorial application, it has none." Morrison, 130 S. Ct at 2886 (2010).

In Morrison, non-United States plaintiffs who purchased ordinary shares of National Australia Bank ("NAB"), an Australian corporation, on the Australian Stock Exchange brought a securities fraud class action under Section 10(b) of the Securities Exchange Act of 1934 against NAB. The suit was brought in the Southern District of New York. To connect the alleged fraud to the United States, the non-U.S. plaintiffs alleged that employees of HomeSide, NAB's U.S. mortgage service provider, knowingly created models that falsely inflated the value of its Mortgage Servicing Rights ("MSR"). HomeSide employees then allegedly transmitted those inflated values to NAB executives in Australia, who allegedly participated in the fraud by including that information in NAB financial disclosures issued from Australia. When the inflated MS values became apparent, NAB took large write-downs, causing a decline in NAB's share price.

4

Applying what was then the law, the trial court in the Southern District of New York used the "conduct" and "effects" test and dismissed the non-claims for lack of subject matter jurisdiction. The district court noted that heart of the alleged fraud had occurred in Australia where the NAB directors had determined and issued the content of NAB's purportedly false disclosures.

The Second Circuit affirmed the dismissal but applied a "mix of factors" test. The Court found that (i) the activities in the United States were merely preparatory to a fraud; (ii) the culpable acts or omissions that occurred in the United States did not directly cause losses to investors abroad; (iii) the primary responsibility for the content and issuance of the disclosure was not within the United States, and (iv) none of the alleged misstatements emanated from the United States. Accordingly, the Second Circuit held there was no subject matter jurisdiction over the case in the Southern District of New York.

The United States Supreme Court affirmed the result reached by the Second Circuit but on totally different grounds and analysis.

Writing for the majority of the Court, Justice Scalia reaffirmed that the Supreme Court always presumes that a U.S. law does <u>not</u> apply territorially, unless there is a clear indication in the statute that Congress intended it to do so. Looking at the Exchange Act, Justice Scalia noted that "there is no clear indication in the Exchange Act that Section 10(b) applies extraterritorially, and we therefore conclude that it does not."

Invoking the presumption against extraterritorial application of U. S. law, Justice Scalia stated that the Court would (as should all other Courts), apply the presumption against extraterritoriality in <u>all</u> cases (not just 10b cases) where the statute did not invoke jurisdiction,

5

rather than "guess anew" at what Congress would have wanted had it thought about the situation before." Morrison, at 2881.

In determining whether the alleged violation took place in the United States or was outside U.S. jurisdiction, Justice Scalia rejected both the "conduct" and the "effects" tests because they were vague, and would potentially encompass too many actions. Instead, the Court set forth what has come to be referred to as the "focus" or "transactional" test. Id. at 2884.

Because neither the conduct test nor the effects test properly reflected the two policy concerns against extraterritorial application of U.S. law, Justice Scalia set aside both and instead adopted what is "transactional approach." The two policy concerns driving Justice Scalia's majority opinion were important to his analysis and are relevant in every case, including the one before this Court.

One policy concern, Justice Scalia noted, was the "fear that the United States has become the Shangri-La of class-action litigation…" The second policy concern was that the United States court might issue decisions that conflict with the laws and the foreign sovereigns in which the exchanges reside. The transactional test, the majority noted, would focus not on where the conduct (in this case, deception) originated or occurred or where its effects were felt. Instead, the Court held, the focus in Morrison was properly "upon purchases and sales of securities in the United States." Id. at 2884. As the purchase and sales transactions in Morrison occurred outside of the United States, and the case involved no transactions in "securities listed on domestic exchange" the Court affirmed the lower court's dismissal of the complaint. Id.

Although Morrison deals with the Securities Exchange Act, its holding and language is not so limited. Perhaps recognizing that the Supreme Court had not addressed extraterritorial application of U.S. law since its 1922 decision in United States v. Bowman, 260 U.S. 94, 98

6

(1922), Justice Scalia was clear: where the statute did not invoke jurisdiction, rather than "guess anew at what Congress would have wanted had it thought about the situation before there is no extraterritorial application." Morrison, at 2881. As the purchase and sale transactions in Morrison occurred outside the United States, and the case involved "no securities listed on a domestic exchange," the Court dismissed the complaint. This Court should do the same given the facts here.

None of the transactions in this case occurred in, or are related to, the United States. According to the indictment each of the acts took place outside of the United States, did not involve commodities made by the United States, and have no bearing on the United States or its domestic interests.

The government will undoubtedly argue that the holding in Morrison is limited to civil cases, and that Bowman controls in criminal cases. Given the language and analysis used by Justice Scalia, the government's anticipated argument is simply wrong. In some sense, both Bowman and Morrison are not in conflict as they are premised on the same policy principles and depend on two considerations – (i) the purpose of the statute, and (ii) a government's right to function as a sovereign. As discussed infra, the purpose of the 924(c) statute is to regulate domestic violence. Thus, purpose or "focus" of 924(c) is domestic. If the purpose of the statute at issue was to protect U.S. interests or personnel abroad (such as the prohibition against murdering U. S. nationals), then clearly the statute has extraterritorial force. 18 U.S.C. § 924(c)'s focus is, however, domestic. Thus, there a strong presumption against extraterritoriality which

7

can only be overcome through something approaching a clear statement through legislative history or congressional action, neither of which is present here.[1]

It is important for this Court to note that the argument here is distinct from that offered by other defendants who have been charged under the 924 statute. In United States v. Al Kassar, 582 F.Supp.2d 488 (2008), the defendants (hereinafter the "Al Kassar defendants"), argued that 18 U.S.C. § 1114, which makes it a crime to kill or conspire to kill "any officer or employee of the United States or of any agency in any branch of the United States government," lacked an explicit provision for extraterritorial jurisdiction. In dismissing their challenge, this Court rightfully noted that "th[e] statute, on its face, is clearly aimed at the Government's right to defend itself." Al Kassar, 482 F.Supp.2d at 497. Moreover, "[s]tatutes prohibiting crimes against the United States government may be applied extraterritorially even in the absence of 'clear evidence' that Congress so intended." Id., quoting Gatlin, 216 F.3d at 211.

The statute at issue here has nothing to do with protecting government institutions, or United States government employees. This Court should look to the holding of Gatlin. In that case, the Second Circuit rejected an attempt to apply 18 U.S.C. § 7(3), a statute defining the "special maritime and territorial jurisdiction of the United States," extraterritorially to encompass the prosecution of a sexual assault that occurred on a U.S. military base. In doing so, the court lambasted the Fourth Circuit for reaching a contrary conclusion in United States v. Erdos, 474 F.2d 157 (4th Cir. 1973).

---

[1] We also anticipate the government citing to United States v. Mardirossian, 10 Cr. 135 (JSR) in support of their position of the extraterritorial application of 924(c). In Mardirossian, Judge Rakoff declined to find a Bowman exception. Instead, the Court (we argue most respectfully) misread Yousef as creating a second exception – the theory of ancillary jurisdiction. Even if this theory of ancillary jurisdiction was somehow consistent with Bowman, it is in untenable in light of the Supreme Court's ruling in Morrison.

8

According to the Second Circuit, "the Erdos Court failed to apply the proper canon of statutory construction," Gatlin, 216 F.3d at 214. The Gatlin court reiterated and reemphasized that "absent clear evidence of congressional intent to apply a statute extraterritorially, a statute applies only within the territorial United States." *Id.* at 214-15 (citation and internal quotation marks omitted). Had the Erdos court "applied the presumption against extraterritoriality, there is little doubt it would have been compelled to reach a different conclusion." *Id.* The same logic applies to the present case at bar; consequently, this Court should dismiss Count Five of the Indictment.

Finally, the government also references 18 U.S.C. § 3238 in its Indictment. *See* Indictment ¶ 18. That statute merely provides that persons already subject to the laws of the United States, such as United States citizens living abroad, should be tried in the venue where they are first brought. It does not provide an independent basis for the assertion of extraterritorial jurisdiction over a foreign national. *See, e.g.,* United States v. Velasquez-Mercado, 697 F. Supp. 292, 294 (S.D. Tex. 1988) (rebutting government's argument that § 3238 afforded jurisdiction over a Mexican national who allegedly assaulted two women in Mexico).

## CONCLUSION

For the reasons outlined above, Mr. Ahmed respectfully requests dismissal of Count Five

9

of the Indictment.

Dated: New York, New York
       January 17, 2011

                        Respectfully submitted,

                        David E. Patton, Esq.
                        FEDERAL DEFENDERS OF NEW YORK, INC.

By: _____
                        Sabrina P. Shroff, Esq.
                        Federal Defenders of New York
                        52 Duane Street - 10th Floor
                        New York NY 10007


                        & Sean M. Maher
                        233 BROADWAY, SUITE 801
                        NEW YORK, NEW YORK 10279

                        Attorneys for Mohamed Ibrahim Ahmed