```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

UNITED STATES OF AMERICA,           :      10 Cr. 131 (PKC)

          -v-                       :

MOHAMED IBRAHIM AHMED,              :

             Defendant.             :

------------------------------------X
```

 

        MOHAMED IBRAHIM AHMED'S REPLY SENTENCING MEMORANDUM

 

```
                              DAVID E. PATTON
                              Federal Defenders of New York, Inc.
                              Attorney for Defendant
                              Mohamed Ibrahim Ahmed
                              52 Duane Street
                              New York, New York 10007
                              Tel.: (212) 417-8700

SABRINA P. SHROFF,
   Of Counsel

TO:  PREET BHARARA, ESQ.
     United States Attorney
     Southern District of New York
     One St. Andrew's Plaza
     New York, New York 10007

     Attn.: BENJAMIN NAFTALIS, ESQ.
            JOHN P. CRONAN, ESQ.
            RACHEL P. KOVNER, ESQ.
            Assistant United States Attorneys
```

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

March 25, 2013

By Hand & ECF

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   **United States v. Mohamed Ibrahim Ahmed**
      **10 Cr. 131 (PKC)**

Hon. Judge Castel:

I write in short response to the government's March 12, 2013 letter ("Govt. Letter"), and in further support of defendant Mohammed Ahmed's request for a five year sentence, to be followed by immediate deportation from the United States.

In his original Sentencing Memorandum ("Ahmed Memorandum"), Mr. Ahmed made the following points in support of a five year sentence: (i) the terrorism enhancement is so punitive it renders the advisory guidelines range in this case inherently unreasonable; (ii) Mr. Ahmed is a foreign national whose sole aim in training with Al-Shabab was to try to (unsuccessfully) join the fight against Ethiopia; he had no greater political aim or motivation and certainly none that was directed toward the United States of America or its people; (iii) Mr. Ahmed should serve concurrent five-year sentences on his two counts, rather than the five-year consecutive sentences urged by the government, because no one disputes the two counts involve the same act and transaction; (iv) a comparison of this case with other applicable cases demonstrates that five years is the appropriate sentence here; and (v) the unusually severe conditions of his past and future confinement also support imposition of a five year sentence here.  See Ahmed Memorandum at 3-16.

The Govt.'s Letter fails to persuasively grapple with any of these sentencing points, focusing almost exclusively instead on Al-Shabab, the acts and statements of others, and the horror of international terrorism.[1]  The Court, however, is not here to

---

[1] On March 19, 2013, the Court, upon request by defense counsel, struck many of the purported facts set forth in the PSR that did not directly involve Mr. Ahmed and/or his offense, or were not sufficiently supported.  See 3/19/13 Hearing Transcript.  The Govt. Letter repeats many of the material stricken from the PSR.  The Court should strike those portions of the Govt. Letter too, so the stricken material does not improperly become part of the record in this case.  In this regard, defense counsel's efforts to make a PSR

The Honorable P. Kevin Castel  March 25, 2013
United States District Judge  Page 2

Re: United States v. Mohamed Ibrahim Ahmed
    10 Cr. 131 (PKC)

sentence Al-Shabab or Al-Qaeda; the Court's duty is to sentence a man, Mohamed Ibrahim Ahmed, for trying to obtain military training from Al-Shabab so he could fight against Ethiopia and for Eritrea. For all the reasons set forth herein and the Ahmed Memorandum, five years remains the sentence most appropriate to the man, the offense, and the fundamental goals of sentencing.

*First*, in its six-page discussion of the guidelines range (Govt. Letter at 10-15), the government fails to acknowledge, much less discuss or distinguish, the cases and courts holding that the overbroad and blunt nature of the terrorism enhancement renders "the guidelines to be unreasonable and not to be a fair exercise of the Sentencing Commission's discretion." United States v. Yusuf, Case No. 10 Cr. 4551 (BTM), (S.D. Cal. Dec. 11, 2012), Sentencing Tr. at 30-31, 34, 54-57 (holding that the unreasonable nature of the sentencing guidelines in terrorism-related cases means "I [the Court] can't give the guideline factor too much weight in this 3553 analysis"; sentencing defendant Yusuf to eight years for providing material support to Al-Shabab, rather than the 10 years sought by the government). See also United States v. Stewart, 590 F.3d 93, 144 (2d Cir. 2009) (affirming district court's decision and duty to distinguish among defendants who fall under the broad scope of the terrorism enhancement); id. at 154 (Calabresi, J., concurring) ("When a Guidelines recommendation has such dramatic consequences and yet covers a multitude of sins, unusually broad sentencing discretion in the district court is essential."); United States v. Meskini, 319 F3d 88, 92 (2d Cir. 2003) ("A judge determining that § 3A1.4(b) over-represents the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes always has the discretion under § 4A1.3 to depart downward in sentencing. U.S.S.G. § 4A1.3.") (emphasis added). As these cases make plain, this Court must apply the discretion the guidelines lack in sentencing Mr. Ahmed, and consider his motivations and the specific acts for which he is charged before imposing a sentence.

*Second*, the parsimony principle, and the other sentencing considerations and goals underlying 18 U.S.C. 3553(a) is best served by a sentence of five years in prison. In this regard, no matter how much the government tries to lard its sentencing letter with discussions of Al-Shabab, the crimes, statements, and bad acts of others, or a robbery/fraud Mr. Ahmed allegedly committed in Europe a decade or more ago (Govt. Letter at 1-10), it remains apparent that the defendant and his acts at issue deserve a five year sentence.

---

as accurate as possible does not and should not affect or lessen the Court's evaluation of Mr. Ahmed's cooperation with the government. Nothing about our challenge to the accuracy of the PSR, should take away from the undisputed facts in this case – for five months, without access to counsel or family, Mr. Ahmed spoke with every law enforcement agency of the United States which approached him and provided to them the information they were seeking.

The Honorable P. Kevin Castel                                              March 25, 2013
United States District Judge                                                      Page 3

Re: <u>United States v. Mohamed Ibrahim Ahmed</u>
    10 Cr. 131 (PKC)

       Mr. Ahmed is being sentenced by the Court because, in 2009, Mr. Ahmed traveled to Somalia to receive military training so he could join the fight between Eritrea and Ethiopia. To gain access to that training and an opportunity to join the fight, Mr. Ahmed paid various persons in Somalia approximately $600 total in bribes and other donations. PSR ¶ 13.

       The government's desperate attempts to make Mr. Ahmed appear more important than he is, and tie him to Al Shabab's views regarding America, are unpersuasive. The fact remains that (i) "al Shabaab did not trust him [Mr. Ahmed] and had been keeping him in Baraawe [away from any fighting]." (Govt. Letter at 8); (ii) Mr. Ahmed never engaged in any fighting and left his training in frustration because Al-Shabab would not trust him or let him fight (<u>id.</u>); (iii) even when pressed by his interrogators, Mr. Ahmed never voiced any animosity to the United States or its citizens, or support for Al Shabab goals beyond its fight in Somalia against the Transitional Federal Government (<u>id.</u> at 5-7); and (iv) Mr. Ahmed has never been part of, or even alleged to be part of, any actual terrorist plot or action, or shown to be of any importance whatsoever to Al-Shabab (<u>id.</u> at 1-10). Perhaps the most desperate effort by the government is its multi-page effort (Govt. Letter at 9-10) to have this Court make the Bilal jihadist group (Jamaat Jihadiya) part of sentencing, even as the government is forced to admit that the Bilal group is not Al-Shabab, and that Mr. Ahmed specifically declined to join the Bilal group because "the defendant perceived the group to be too violent" (<u>id.</u>). Notably, no evidence exists that Mr. Ahmed ever did anything for the Bilal group, or even ever communicated with the Bilal group again using the cipher sheet the group provided Mr. Ahmed. The Court should note that the United States Department of State does not list Jamaat Jihadiya as a Foreign Terrorist Organization. See, Exhibit A.

       In the end, despite the government's strenuous efforts, Mr. Ahmed remains who he is – a person who bought a personal weapon and sought military-type training so he could join the fight in Somalia against Ethiopia because he was Eritrean, but never managed to convince Al-Shabab to trust him enough to let him join that fight (perhaps because he did not share their wider goals and aspirations of a more general jihad). See Ahmed Memorandum at 1-15. Mr. Ahmed now understands that his support of Eritrea does not excuse his actions or associations. Mr. Ahmed will never turn to any terrorist or violent organization again, or ever again support the use of violence against Ethiopia or its Somali allies. <u>Id.</u>

       *Third*, there is no dispute that the two counts at issue are to be grouped together in a single group for sentencing purposes because they involve the same act or transaction. See Govt. Letter at 14; PSR p. 4; <u>id.</u> ¶ 37 ("the counts involve the same victim and the same act or transaction"). Notably, the government never provides – either in its March 12 letter or in the PSR – any reason or rationale why this admittedly single act should

The Honorable P. Kevin Castel  March 25, 2013
United States District Judge  Page 4

Re: <u>United States v. Mohamed Ibrahim Ahmed</u>
    10 Cr. 131 (PKC)

effectively be punished twice, with two consecutive sentences of five years each. It is respectfully submitted that this one single act, entirely limited to Mr. Ahmed's efforts to join the fight in Somalia, should be punished once, with a concurrent sentence of five years.

*Fourth*, the government entirely ignores Mr. Ahmed's argument that the ten year sentence sought by the government would lead to an unwarranted sentencing disparity between Mr. Ahmed and similarly-situated defendants. See Ahmed Memorandum at 12-15. Specifically, even defendants who wholeheartedly support the goals of Al-Shabab or al Qaeda, and encouraged terrorist acts against the United States while living in, and enjoying the benefits of, America, have been sentenced to less than the 10 years in prison that is being sought by the government here. See <u>United States v. Yusuf</u>, Case No. 10 Cr. 4551 (BTM) (S.D. Cal. Dec. 11, 2012) (eight years for American defendant who devoted her life and efforts to recruiting and encouraging others to join Al-Shabab and martyr themselves); <u>United States v. Warsame</u>, 651 F.Supp.2d 978, 979-980 (D. Minn. 2009) (seven years and eight months for American defendant who trained with <u>Al-Qaeda</u> in training camp run by Bin Laden, and continue to provide material support to al Qaeda after the 9-11 attacks). Demonstrably, it would be disparate and improper for the Court to impose a higher sentence on Mr. Ahmed, a foreign national, who sought only to fight for Eritrea, and did not care about or support Al-Shabab's wider goals and self-declared fight against America. Mr. Ahmed never once undertook or encouraged any acts against the United States or its people. Instead, in light of these key distinctions which the government studiously avoids and leaves unaddressed, the Court should impose a lesser, but still severe, sentence of five years in prison, followed by immediate deportation from the United States.

*Fifth*, there is no question, and the government nowhere disputes, the unusually severe conditions Mr. Ahmed faced while imprisoned and in custody for five months in Nigeria, or the unusually severe conditions Mr. Ahmed will face while imprisoned in the United States. In Nigeria he spent five months in a prison the State Department has recognized is inhumane. Facing no charges in Nigeria, he was held at the request of the United States. He was never given access to an attorney. Medical treatment was equally unavailable to him, and within weeks of his arrival in New York, Mr. Ahmed was hospitalized.[2]

In the United States prison system, he has been subject to severe administrative restrictions; for the first several months, Mr. Ahmed was held in isolation on the 9-South

---

[2] On March 8, 2010, Mr. Ahmed complained about hernia pain. His pain persisted and he continued to complain until April 7, 2010, by which time the hernia was visible. He was then rushed to Downtown Hopsital and released on April 27, 2010, after undergoing surgery. See, Medical Records attached as Exhibit B.

The Honorable P. Kevin Castel  March 25, 2013
United States District Judge  Page 5

Re: United States v. Mohamed Ibrahim Ahmed
    10 Cr. 131 (PKC)

wing of the Metropolitan Correctional Center. While caged on 9-South, he was allowed to make one call every 30 days. These conditions make his time in prison significantly more onerous than the conditions faced by the ordinary pretrial detainee or inmate, and is properly considered in the § 3553(a) calculus and in support of the requested five year sentence. See, e.g., Stewart, supra; Warsame, supra.

Unlike the government, this Court is required to focus on the person being sentenced and the pled offenses in making its sentencing decision. Unlike the government, the Court should not simply ignore all the facts and circumstances that demonstrate why the requested five year sentence is a "sufficient, but not greater than necessary" to meet the sentencing goals of 18 U.S.C. § 3553(a). For each and every one of the reasons discussed herein and in the Ahmed Memorandum, a sentence of five years (60 months) in prison, followed by immediate deportation from the United States, remains a sentence appropriate to Mr. Ahmed and his particular circumstances.

Mr. Ahmed continues to thank the Court for its time and attention to this matter.

Respectfully submitted,

Sabrina P. Shroff
Assistant Federal Defender
Attorney for Mr. Mohamed Ibrahim Ahmed

cc:   Benjamin Naftalis, AUSA
      John P. Cronan, AUSA
      Rachel P. Kovner, AUSA